IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **TIMOTHY SCOTT SCOGGINS,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | Civil No.4:22-CV-087-Y |
| | § | |
| **BOBBY LUMPKIN** | § | |
| **Director, TDCJ-CID,** | § | |
| | § | |
| **Respondent.** | § | |

**OPINION AND ORDER DISMISSING**
**PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is a petition for a writ of habeas corpus under 28 U.S.C. § 2254 filed by counsel on behalf of petitioner, Timothy Scott Scoggins ("Scoggins"), a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice ("TDCJ"), against the director of that division, Respondent. Respondent filed a preliminary response; Scoggins's counsel filed a reply; and in response to a Court order, Scoggins filed a sur-reply. (Docs. 12, 17, and 19.) After having considered the pleadings and applicable law, the Court concludes that the § 2254 petition must be **DISMISSED** with prejudice.

## I.     Background and Procedural History

Scoggins is in custody after incurring a conviction for burglary of a habitation with intent to commit another felony, to wit: aggravated assault with a deadly weapon, namely a firearm (comprises four counts), in Criminal District Court No. 1, Tarrant County, Texas in cause number 1541044R (comprised of four counts), styled *The State of Texas v. Timothy Scott Scoggins*.

1

(Clerk's Record (CR) 174–90; (doc. 14-1).[1]  Scoggins was charged with and he pleaded not guilty to four counts of burglary of a habitation with intent to commit a felony. (CR 7, (doc. 14-1); 5 RR 27–28, (doc. 14-6). The jury found Scoggins guilty on all four counts and sentenced him to forty-seven years' imprisonment on each count, the sentences to be served concurrently. (CR 174–90, (doc. 14-1); (8 RR 49–50, (doc. 14-9); (9 RR 32–35, (doc. 14-10). Following the verdict, Scoggins filed a motion for new trial alleging that he had newly discovered, material evidence. (CR 222–30, (doc. 14-1). After holding a hearing to consider the motion, the trial court denied the motion for a new trial. (10 RR 1–61, (doc. 14-11)); (11 RR 1–88, (doc. 14-12). The Second Court of Appeals of Texas affirmed the conviction on September 3, 2020. *Scoggins v. State*, No. 02-19-00209-CR, 2020 WL 5241197 (Tex. App.—Fort Worth Sept. 3, 2020, pet. ref'd). The Texas Court of Criminal Appeals (TCCA) refused Scoggins's petition for discretionary review (PDR) on January 13, 2021. (PD-1002-20, (doc. 14-32).

Scoggins did not file an application for state writ of habeas corpus. (Response, Exhibit A, (doc. 12-1)). Scoggins filed the instant § 2254 petition on January 10, 2022. (Pet. 15, (doc. 1)).

## II.    Statement of Facts

The Second Court of Appeals summarized the facts of the case:

### The Evidence at Trial

Peggy worked from home. One day while she was working, two burglars paid her a visit.

The first burglar—whom Peggy could see through the tall vertical windows in her

---

1. "CR" refers to the pleadings and documents of the jury trial in the Clerk's Record, followed by the page number(s). (Doc. 14-16). "RR" refers to the statement of facts of the jury trial in the Reporter's Record, preceded by the volume number and followed by the page number(s). (Docs. 14-2 through 14-18).

twin front doors—was dressed nicely, wore a Cub Scout hat, and presented himself as someone looking for his mother's lost dog. Peggy obligingly unlocked the door, took the man's flier, and relocked the door.

Then the first burglar requested some water. Peggy fetched a bottle, unlocked the door again, and handed it to him; this time, however, the first burglar overpowered Peggy to force his way inside and—once inside—pulled a gun on her. At some point, the first burglar put a bandanna over his face.

After the first burglar satisfied himself that no one else was in the house, he radioed to someone else by walkie-talkie that the "coast [was] clear." The first burglar then put on latex gloves and tied Peggy up.

The second burglar—carrying a rifle and wearing a mask—entered Peggy's home and started ransacking it. While the second burglar searched, the first burglar stayed with Peggy.

The burglars' timing proved thorny; they too encountered unexpected visitors.

First, a glass contractor—who had an appointment with Peggy— came to the door. The first burglar told the second one to take off his mask and gloves, answer the door, and get rid of the contractor. Passing himself off as Peggy's nephew, the second burglar then spoke to the contractor, told him that the appointment had been cancelled, and said that he would call his aunt to verify. A couple of minutes later, the second burglar returned and related that he had not been able to reach his aunt. Oblivious to what was going on, the contractor instructed the second burglar to have Peggy call his office to set up another appointment and left.

The burglars had less luck with the second unexpected visitor. Moments after the contractor left, Peggy's son Zachary returned home. The burglars waited in ambush, and when they heard Zachary go up the back staircase, the second burglar yelled out to Zachary to stop. Zachary described walking up the stairs, hearing someone call out his name, turning around, and seeing a man wearing a black ski mask pointing a rifle at his face. When Zachary did not stop, the first burglar told the second burglar to "go get him," and the second burglar took off after Zachary. Zachary escaped by running to a second-floor balcony and, from there, jumping down onto a portion of the first-story roof, scampering across the roof to another side of the house, and jumping off near the driveway. Quickly changing tack, the first burglar said, "[W]e got to get out of here now," and the two burglars ran out the front door. Although still tied up, Peggy managed to phone 911.

A detective later found a latex glove in the master bedroom—where the second but not the first burglar had been. The glove was similar to the type that Peggy had seen

3

the first burglar wearing. The detective sent the glove away for DNA testing. At trial, a DNA analyst testified that she found DNA on the latex glove, and after the DNA was tested, Scoggins's name turned up in a DNA-profile database as a match. Based on that match, the detective obtained a warrant and arrested Scoggins as the second burglar, the one who had entered the master bedroom.

At trial, the only person to have seen the second burglar without a mask on—the contractor—could not identify him.

The jury found Scoggins guilty of each count in the indictment.

<u>The Evidence at the Hearing on Scoggins's Motion for New Trial</u>

In Scoggins's motion for new trial, he complained that the State's testifying DNA analyst had recently been disciplined for poor work performance. At the new-trial hearing, the analyst's supervisor testified that on the same date the jury rendered its verdict on Scoggins's case, the DNA lab withdrew the analyst's authorizations to analyze data and issue reports. The analyst had testified at Scoggins's trial six days earlier.

The supervisor explained that the analyst's shortcomings occurred when she analyzed DNA mixtures; in contrast, Scoggins's case involved a high-quality single source, so the supervisor asserted that the analyst's conclusions were correct because the analyst had no issues when analyzing single-source DNA evidence. The supervisor characterized analyzing single-source DNA as "very straightforward" and analyzing DNA mixtures as "much more complex."

The supervisor said that she had not redone the lab work; that is, she had not taken and analyzed a new sample because the analyst had not been disciplined for her lab work—"the actual evidence cutting, ... the pipettes[,] the dilution, the amplification, [and] all those different steps...." The State pressed the supervisor to explain why she had not redone the lab work:

> Q. I want to ask you something just for clarification. You said that she -- you've reviewed her work, but you did not actually go in and ... reprocess the DNA samples and the reference sample.
>
> Why did you not do that? Why is that what you called "not necessary"?
>
> A. There were no issues detected with the work. The expected results were consistent with the quantitative values obtained. It was a high quality, single source profile. I saw no reason for the samples

4

to be reprocessed, to consume additional evidence when it was unnecessary.

The analyst had been disciplined for errors in analyzing data or calculating statistics specifically when mixtures were involved; it was the mathematical part that the analyst was no longer allowed to do. Even then, none of the analyst's mathematical errors were what the supervisor called "critical errors," that is, the analyst's results had not led to a false inclusion, a false exclusion, or a false inconclusive. The supervisor had performed a complete review of the analyst's work in Scoggins's case and was confident that the analyst's results were accurate.

Although not entering a written order, the trial court denied Scoggins's motion on the record.

*Scoggins*, 2020 WL 5241197, at *2–4.

## III.   Ground for Relief

Scoggins listed the following ground for relief:

1. Petitioner was denied his federal constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments where the trial court prejudicially erred in denying Petitioner's motion for a new trial based upon newly discovered and material evidence that was favorable to the defense and was a matter over which Petitioner had no counsel.

(Pet. Attachments 16, 40, (doc. 1)).

## IV.   Analysis

### A.   Standard of Review

Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in state criminal-justice systems, not a substitute for ordinary error correction through appeal. For claims that were adjudicated in state court, § 2254(d) imposes a highly deferential

standard that demands a federal court grant habeas relief only where one of two conditions are present in the state-court judgment. First, federal court may grant relief if the state court adjudicated a constitutional claim contrary to federal law, or unreasonably applied clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 100–01 (2011) (citing *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000)). And second, the court may grant relief if the state-court decision was based on an unreasonable determination of facts in light of the record. *Id*. Section 2254(d)'s standard is necessarily difficult to meet because it was so designed.

A state-court decision can be "contrary" to established federal law in two ways. *(Terry) Williams*, 529 U.S. at 405–06. First, if the state court applies a rule that contradicts Supreme Court precedent. *Id.* at 405. Second, if the state court confronts facts that are "materially indistinguishable" from relevant Supreme Court precedent but reaches an opposite result. *Id.* at 406. A state-court decision applying the correct Supreme Court rule to the facts of a particular case is to be reviewed under the "unreasonable application" clause. *(Terry) Williams*, 529 U.S. at 406. A state court unreasonably applies Supreme Court precedent only if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case. *Id.* at 407–09. The focus of this test is not on the state court's method of reasoning, but rather on its ultimate legal conclusion. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) ("It seems clear to us that a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision.").

To determine if the state court made an unreasonable application of federal law, a federal court "must determine what arguments or theories supported or . . . could have supported, the state

court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington* 562 U.S. at 102. Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision. *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Further, in reviewing a state court's merits adjudication for reasonableness, a federal court is limited to the record that was before the state court. 28 U.S.C. § 2254(d)(2); *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

The question for federal review is not whether the state-court decision was incorrect, but whether it was unreasonable, which is a substantially higher threshold. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Federal courts look to the "last reasoned opinion" as the state court's "decision." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012). If a higher state court offered different grounds for its ruling than a lower court, then only the higher court's decision is reviewed. *Id.* "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

This Court must accept as correct any factual determinations made by the state courts unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Ford v. Davis*, 910 F.3d 232, 234 (5th Cir. 2018) ("a state court's factual findings are presumed to be correct, and the applicant bears the burden of rebutting that

presumption by clear and convincing evidence."). The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact"). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951 (holding that "a full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review."). Further, the district court can "infer the state court's factual findings" so long as "some indication of the legal basis for the state court's denial of relief" exists. *Ford*, 910 F.3d at 235 (citing *Goodwin v. Johnson*, 132 F.3d 162, 184 (5th Cir. 1997)(other citations omitted)). Moreover, where the state's highest court's decision lacks any reasoning, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Furthermore, an evidentiary hearing is precluded unless: (1) a petitioner's claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) the petitioner establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254(e)(2). A failure to meet this standard of "diligence" will bar a federal evidentiary hearing in the absence of a convincing claim of actual innocence that can only be established by newly discovered evidence. *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000). For example, a petitioner's

8

failure to present controverted, previously unresolved factual issues to the state court can qualify as a "failure" under the plain meaning of § 2254(e)(2). *Id*. at 433. However, Section 2254(e)(2) has "force [only] where § 2254(d)(1) does not bar federal habeas relief." *Pinholster*, 563 U.S. at 185–186. Accordingly, even if a petitioner can leap the § 2254(e)(2) hurdle, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.* at 185. And whatever discretion remains after *Pinholster* to hold an evidentiary hearing, it is still appropriate to deny such a hearing if sufficient facts exist to make an informed decision on the merits. *Schriro*, 550 U.S. at 474–75. Petitioner has not met this standard for a hearing, and any such request should be denied.

Finally, pre-AEDPA precedent forecloses habeas relief if a claim (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).

## B. Procedural Bar

As noted, Scoggins alleges only one ground for relief in his petition: that the state trial court erred by denying his motion for new trial based on "newly discovered and material evidence," specifically that the DNA analyst who testified at trial was recently disciplined for poor work performance and the State withheld this information in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). (Pet. 5, 16, 41-50, (doc. 1). For the reasons explained below, this ground for relief is procedurally barred from federal review.

9

A federal habeas claim is procedurally defaulted when the state court has based its rejection of the claim on a state procedural rule that provided an adequate basis for relief, independent of the merits of the claim. *Coleman*, 501 U.S. at 729-32. Under the procedural-default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *Brown v. Davis*, No. 4:19-cv-547-Y, 2020 WL 3036549, at * 7 (N.D. Tex. June 4, 2020) (citation omitted).

The Fifth Circuit has repeatedly held that a procedural default premised on the petitioner's failure to comply with the Texas contemporaneous-objection rule constitutes an adequate and independent bar to federal habeas review. *See Scheanette v. Quarterman*, 482 F.3d 815, 823 (5th Cir. 2007) ("We have recognized a federal petitioner's failure to comply with the Texas contemporaneous-objection rule as an adequate and independent state procedural barrier to federal habeas review."); *Parr v. Quarterman*, 472 F.3d 245, 253 (5th Cir. 2006)(holding the Texas contemporaneous-objection rule is strictly or regularly applied evenhandedly to the vast majority of similar claims and is, therefore, an adequate procedural bar); *see, e.g., Wright v. Quarterman*, 470 F.3d 581, 586–89 (5th Cir. 2006)(finding Texas petitioner's hearsay objection inadequate to preserve a Confrontation Clause objection to the admission of evidence); *Cardenas v. Dretke*, 405 F.3d 244, 249 (5th Cir. 2005) (finding Texas petitioner's failure to contemporaneously object to a venire member's exclusion barred federal habeas review of a *Batson* claim); *Rowell v. Dretke*, 398 F.3d 370, 374–75 (5th Cir. 2005)(finding Texas petitioner's failure to timely object to alleged errors in a jury charge, determined by a Texas appellate court to be a violation of the Texas contemporaneous-objection rule, barred federal habeas relief of the allegedly erroneous jury

charge under the procedural-default doctrine).

In the instant case, Scoggins raised this claim on direct appeal alongside the claim that the trial court erred in denying his motion for new trial in violation of state law. (Scoggins Brief on Appeal 31-41, (doc. 14-22). The Second Court of Appeals issued the last reasoned opinion on the matter in affirming Scoggins's convictions on direct appeal. *Scoggins*, 2020 WL 5241197, at *1– 5. In overruling this issue and affirming Scoggins's convictions, the intermediate state appellate court found that:

> In his brief, Scoggins complains that the State violated the Michael Morton Act and *Brady v. Maryland* by not disclosing the analyst's shortcomings earlier. *See* Tex. Code Crim. Proc. Ann. art. 39.14; 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963). But his motion for new trial does not raise that argument: Scoggins relied strictly on article 40.001 of the Texas Code of Criminal Procedure and cases construing it. The trial court heard and effectively denied only the motion for new trial. Scoggins had made two post-conviction requests under *Brady* and the Michael Morton Act, but at the new trial hearings, Scoggins did not complain about the State's failure to comply with either of his post-conviction requests. Scoggins has not preserved this portion of his appellate argument. *See* Tex. R.App. P. 33.1; *Keeter v. State*, 175 S.W.3d 756, 759–60 (Tex. Crim. App. 2005).

*Scoggins*, 2020 WL 5241197, at *3 n. 6. The appellate court considered only the issue that Scoggins had preserved for appeal—a state-law claim that the trial court's denial of his motion for new trial was in violation of Texas Code of Criminal Procedure art. 40.001. *Id*. at 4–5. The Second Court of Appeals' refusal to consider the merits of Scoggins's *Brady* claim due to his failure to preserve the issue similarly bars it from federal review under the procedural-default doctrine. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803(1991) ("[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."); *Scheanette*, 482 F.3d at 823. Based upon this authority Scoggins's claim must be dismissed with prejudice.

11

### C.      Scoggins's Arguments Responsive to Procedural Bar

In reply, Scoggins, through counsel, argued several grounds to excuse the procedural default. Those grounds include:

1.      The Texas Court of Appeals reached his *Brady* claim;

2.      His trial attorney provided ineffective assistance raising good cause to overcome the procedural bar;

3.      Ineffective assistance of trial counsel provides cause to overcome the procedural bar under *Martinez v. Ryan*, 566 U.S. 1 (2012);

4.      He is able to overcome the procedural bar through the Actual Innocence exception; and

5.      The *Brady* violation amounts to a structural error for which prejudice is presumed.

(Reply 2-9, (doc. 17)).

### (1) The Texas Court of Appeals Did Not Reach the Merits of Scoggins's *Brady* Claim.

Scoggins asserts in his reply that the Texas court of appeals did adjudicate his *Brady* claim on the merits "in acknowledging that the State conceded that the newly discovered evidence was unknown and unavailable to Scoggins at the time of trial, and that Scoggins' failure to discover and obtain the new evidence was not due to a lack of due diligence." (Reply 5 (citing *Scoggins v. State*, 2009 WL 5241197 at *4-5 (2020) (doc. 17)). Review, however, shows that Scoggins is confusing the analysis of a *Brady* claim with the appellate court's analysis of the elements required to be granted a new trial based on newly discovered evidence under Texas law. *See* Tex. Code Crim. Proc. art. 40.001; *see also Carsner v. State*, 444 S.W.3d 1, 2–3 (Tex. Crim. App. 2014)(To be granted a new trial based on newly discovered material evidence the defendant must show: "(1)

the newly discovered evidence was unknown or unavailable to the defendant at the time of trial; (2) the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and, (4) the new evidence is probably true and will probably bring about a different result in a new trial.") (citation omitted)).   While the elements may be similar, the appellate court explicitly stated that it was not considering Scoggins's *Brady* claim because he failed to preserve it for appellate review. *Scoggins*, 2020 WL 5241197, at *3 n. 6. Thus, the Court rejects Petitioner's claim that the court of appeals resolved his *Brady* claim.

(2) Scoggins's Claim that Ineffective Assistance of Trial Counsel Provides Cause to Overcome the Procedural Bar Is Unexhausted.

When a claim is procedurally barred from federal review, a petitioner may overcome that bar by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). In this case, Scoggins must "show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'" *Davila v. Davis*, 528 U.S. 521, 528 (2017) (citing *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). Attorney error may provide cause for excusing a procedural default only if that error amounts to a deprivation of the constitutional right to counsel. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Davila*, 582 U.S. at 528. Furthermore, "ineffective assistance adequate to establish cause for procedural default of some *other* constitutional claim is *itself* an independent constitutional claim" and "must' be presented to the state courts as an independent claim before it may be used to establish cause for procedural default.'" *Edwards v. Carpenter*, 529

U.S. 446, 451–52 (2000) (emphasis in original) (citation omitted).

Scoggins asserts that his trial counsel was ineffective for failing to preserve his *Brady* claim for appellate review and this error is cause to overcome the procedural bar. (Reply 3, (doc. 17). This claim, however, is unexhausted because he has not presented it to the TCCA. As this claim is unexhausted, it cannot excuse the procedural default.

Under AEDPA, a state prisoner's application for a federal writ of habeas corpus shall not be granted unless the applicant has exhausted his state-court remedies. This simply means a petitioner must have first provided to the highest court of the state a fair opportunity to apply (1) the controlling federal constitutional principles to (2) the same factual claims, before a federal court will entertain the alleged errors. *Duncan v. Henry*, 513 U.S. 364, 365–366 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Thus, comity is invoked to give the state courts an opportunity to consider the same factual grounds under the identical legal theories before permitting a petitioner to bring those constitutional claims to a federal court.

The TCCA is the highest court in Texas to which a prisoner may challenge his conviction. Tex. Code Crim. Proc. Ann., art. 4.04 § 2; Tex. Code Crim. Proc. Ann. art. 11.07. The exceptions to the requirement that state remedies be exhausted apply only in "extraordinary circumstances." *DCP Farms v. Yeutter*, 957 F.2d 1183, 1189 (5th Cir. 1992). "Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Hessbrook v. Lennon*, 777 F.2d 999, 1003 (5th Cir. 1985) (emphasis added). A federal habeas petitioner bears the burden of demonstrating the futility of pursuing available remedies. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). In the Fifth Circuit,

14

the position is "that the exhaustion requirement has consistently been construed in favor of giving the state the first opportunity to correct any alleged constitutional errors." *Joyner v. King*, 786 F.2d 1317, 1320 (5th Cir. 1986) (footnote omitted). Thus, the state courts must be given an opportunity to consider the same factual grounds under the identical legal theories before Scoggins is permitted to bring his constitutional claim to this Court.

Scogggins has not presented his claim of ineffective assistance of trial counsel to the State courts. (Scoggins's PDR. (Doc. 14-31). Moreover, Scoggins fails to show why he should not be required to first present his claim to the highest state court. Scoggins's failure to present his claim to the state court does not result from either an "absence of available State corrective process," or to circumstances rendering this process "ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b). Scoggins has not filed a state application for writ of habeas corpus challenging his conviction and could have exhausted his ineffective-assistance claim by doing so. (Resp. (Exhibit A), (doc. 12-1). Thus, the alleged ineffective-assistance-of-counsel claim cannot be used to establish cause for procedural default.

(3) <u>Scoggins Fails to Meet the Requirements of *Martinez* that would allow review of a procedurally defaulted claim.</u>

Scoggins further asserts that his procedurally defaulted claim may be reviewed under the exception provided in *Martinez v. Ryan*, 566 U.S. 1 (2012). (Reply 3, (doc. 17)*; see also Trevino v. Thaler*, 569 U.S. 413 (2013) (Applying the *Martinez* rule in Texas). As explained below, Scoggins's reliance on *Martinez* is misplaced.

In *Martinez*, the Supreme Court expanded on the narrow good-cause exception excusing procedural default and held that when, as in Texas, the state procedural framework makes it highly

unlikely that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, "procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding there was no counsel or counsel in that proceeding was ineffective." *Trevino*, 569 U.S. at 429 (quoting *Martinez*, 566 U.S. at 17).

This case is distinct from *Martinez* and *Trevino* because the good-cause exception to procedural default in those cases is premised on ineffective assistance on the part of post-conviction counsel. *See Trevino*, 569 U.S. at 422–23. In this case, Scoggins's procedurally barred claim is not the claim of ineffective assistance of trial counsel that he raises in his reply, nor has he filed a state writ application or other state collateral review and therefore cannot have suffered from ineffective assistance in state collateral review proceedings.

In *Martinez* and *Trevino* the petitioners were unable to raise their claims of ineffective assistance of trial counsel in subsequent state habeas proceedings after failing to raise them in an initial proceeding, and therefore their claims were procedurally defaulted from federal review. *See Martinez*, 566 U.S. at 5–9; *Trevino*, 569 U.S. at 417–20. By allowing an exception to procedural default based on ineffective post-conviction counsel, the Supreme Court sought to prevent a situation that would "deprive the defendant of any opportunity at all for review of an ineffective-assistance-of-trial-counsel claim." *Trevino*, 569 U.S. at 428 (citing *Martinez*, 566 U.S. at 9–11). Scoggins, however, is not deprived of such an opportunity because he may still file an application for state writ of habeas corpus raising his ineffective assistance of trial counsel claim. Therefore, Scoggins is unable to show "cause" consisting of "no counsel" or "ineffective" counsel during an initial state collateral review proceeding and cannot overcome the procedural bar through the

16

exception recognized in *Martinez*. *See Trevino*, 569 U.S. at 429.

(4) <u>Scoggins's Does Not Meet the Actual-Innocence Exception to the Procedural Bar.</u>

Scoggins next asserts that he can overcome the procedural bar through the "actual innocence" exception. Scoggins, however, does not make a sufficient showing of actual innocence to meet this exception.

In *McQuiggin v. Perkins*, the Supreme Court held a prisoner filing a first-time federal habeas petition could overcome a procedural bar upon a showing of "actual innocence" under the standard in *Schlup*. *McQuiggin v. Perkins*, 569 U.S. 383, 398 (2013); *Schlup v. Delo*, 513 U.S. 298, 314–16 (1995). A habeas petitioner who seeks to surmount a procedural default through a showing of "actual innocence" must support his allegations with "new, reliable evidence" that was not presented at trial and must show that it was more likely than not that, in light of the new evidence, no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 326–27; *see also House v. Bell*, 547 U.S. 518 (2006) (noting the *Schlup* standard is "demanding and permits review only in the "'extraordinary'" case, and discussing at length the evidence presented by the petitioner in support of an actual-innocence exception to the doctrine of procedural default under *Schlup*) (citation omitted)). "Actual innocence" in this context refers to factual innocence and not mere legal sufficiency. *Bousley v. United States*, 523 U.S. 614, 623–624 (1998).

In the instant case, Scoggins fails to offer "new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324. Scoggins asserts that the fact the analyst (Amy Smuts) had been disciplined for poor work performance constitutes such evidence because he "could have

17

demonstrated the falsity of [the analyst's] conclusions at trial." (Reply 5, (doc. 17). While Scoggins could have used this information to impeach Smuts's testimony, it does not establish factual innocence.

At the hearing for Scoggin's motion for new trial, Smuts's supervisor Christina Capt testified that Smuts's authorizations to analyze data and issue reports had been withdrawn because of issues in mathematically calculating DNA calls in mixture data. (10 RR 44-46, (doc. 14-11). A DNA call in mixture analysis requires an analyst to distinguish between major contributors, minor contributors, or foreign contributors. (11 RR 17 (doc. 14-12). The DNA analysis in this case, however, was a single source DNA sample with only one contributor, and therefore the analysis did not require distinguishing between contributors. (11 RR 19–20, 24–26, (doc. 14-12). It was undisputed that Smuts had no issues when analyzing single source DNA evidence. (10 RR 46–47, (doc. 14-11); (11 RR 24–26, 28–29, 40–41, (doc. 14-12). Capt also reviewed Smuts's work in this case and was confident that the results were accurate. (10 RR 56, (doc. 14-11); 11 RR 52, 61-62, 73–75, (doc. 14-12). Scoggins's alleged new evidence of innocence is insufficient to demonstrate that it is more likely than not that no reasonable juror would have convicted him in light of the newly presented evidence. *Schlup*, 513 U.S. at 327. Since Scoggins fails to present any new, reliable evidence sufficient to impact a reasonable juror's verdict, he cannot overcome the procedural bar to his claim.

(5) Scoggins's Structural-Error Claim Does Not Overcome the Procedural Bar.

Finally, Scoggins asserts that his *Brady* claim amounts to structural error for which prejudice is presumed. (Reply 8-9 (doc. 17). "[C]ertain errors in the trial process are so basic to a fair trial as to defy harmless error review." *Virgil v. Dretke*, 446 F.3d 598, 607 (5th Cir. 2006)

18

(footnote and citation omitted). The Supreme Court, however, has held that even in the case of structural error, a showing of actual prejudice is necessary to overcome a procedural bar arising from the failure to object at trial. *See Francis v. Henderson*, 425 U.S. 536, 542 (1976). Scoggins cites no cases in support of his assertion that trial counsel's failure to argue and preserve a *Brady* claim during the motion for new trial constitutes structural error, nor does he show the actual prejudice necessary to overcome the procedural bar. Thus, the Court rejects Scoggins's structural error claim.

For all of the reasons set forth herein, Scoggins has not shown that he can overcome the procedural bar to this Court's review of his constitutional claim. As such, Scoggins's petition under § 2254 must be dismissed with prejudice as procedurally barred from review.

**D.    Alternative Review of Claim of a *Brady* Violation on the Merits**

Notwithstanding the resolution of this case based on the procedural bar, the Court notes, alternatively, that Scoggins's claim of a violation of *Brady v. Maryland* also fails on the merits.

The Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), held that the suppression by the prosecution of evidence favorable to an accused after a request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. To establish a *Brady* violation, Scoggins must prove the following: (1) the prosecutor suppressed or withheld evidence (2) that was favorable and (3) material to the defense. *Moore v. Illinois*, 408 U.S. 786, 794–95 (1972); *Ogle v. Estelle*, 641 F.2d 1122, 1124 (5th Cir. 1981). The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 684 (1985). A "reasonable probability" is a probability sufficient to

19

undermine confidence in the outcome of the trial. *Id.* at 678, 684.

For the same reasons set forth at length above, Scoggins's *Brady* claim lacks any arguable merit. DNA analyst Smuts was disciplined for mathematical errors made in calculating the sources of DNA from mixed samples, but the sample at issue in this case was a single source. Thus, the discovery of Smuts's mathematical errors in mixed-sample cases, has no bearing on her work in a single-source DNA case. The alleged *Brady* violation fails to satisfy the materiality prong. More simply put, there is no reasonable probability that, but for the failure of the prosecution to disclose to the defense prior to trial the fact that the DNA analyst was subject to discipline in mixed-sample cases, the outcome of Scoggins's trial involving single-source DNA would have been any different.

For these reasons, Scoggins's ground for relief must alternatively be denied.

## V.   Conclusion

For the reasons discussed, petitioner Timothy Scott Scoggins's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DISMISSED with prejudice**.

Further, Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. The certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). "Under this standard, when a district court denies habeas relief by rejecting constitutional claims on their merits, 'the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *McGowen v. Thaler,* 675 F.3d 482, 498 (5th Cir. 2012)

(quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). When the district court denies the petition on procedural grounds without reaching the merits, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (quoting *Slack,* 529 U.S. at 484). This inquiry involves two components, but a court may deny a certificate of appealability by resolving the procedural question only. Petitioner has not made a showing that reasonable jurists would question this Court's procedural ruling. Therefore, a certificate of appealability should not issue.

SIGNED August 3, 2023.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE